# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THOMAS PHILLIP VITRANO,

          Plaintiff,

          -vs-          Case No. 10-CV-0800

LINDSEY HAUCK,
NURSE JUDY MILLER,
MARKELLA REED,
BARBARA OBERHART,
JOANNE MEDLEY,
SYLVIA S. GROSS,
DENA WENDLING,
DAWN SMITH,
DR. NICHOLAS AKGULIAN, and
MINDY,

          Defendants.

## DECISION AND ORDER

The plaintiff, Thomas Phillip Vitrano, was allowed to proceed on Eighth Amendment medical care claims which fall into three broad categories: (1) failure to treat the plaintiff's Asthma; (2) a delay in providing the plaintiff's medication to treat his Schizophrenia; and (3) the treatment provided for the plaintiff's Psoriasis, a skin condition. Now before the Court are the defendants' motions for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir.2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2

## II.  FACTS[1]

The plaintiff, Thomas Vitrano, was an inmate at the Kenosha County Jail (Jail) between August 31, 2010, and December 7, 2010.

Defendant Nicholas Akgulian, M.D., is a board certified family practice physician who worked for Advanced Correctional Health Services as the medical director at the Jail during the time period relevant to the plaintiff's complaints. Dr. Akgulian's responsibility was to respond to the medical issues at the Jail that were brought to his attention by the nursing staff. Dr. Akgulian fulfilled his responsibility by seeing patients at the Jail, as well as communicating with the Jail's correctional health service staff and reviewing medical records. Dr. Akgulian also was on call to respond to questions from the staff or other needs on a twenty-four hour per day, seven day per week basis. At all times during the plaintiff's incarceration at the Jail, Dr. Akgulian exercised his professional medical judgment with regards to the plaintiff's medical needs to provide him with appropriate treatment.

Defendants Lindsey Hauck, Jo Ann Medly, Judy Miller, Barbara Oberhart, Markella Reed, and Sylvia Gros are currently either part time or full time employees of the Kenosha Visiting Nurse Association, Inc. Defendant "Mindy" is Mindy Russell. Defendants

---

[1] The Facts are taken from the defendants' proposed findings of fact, to the extent they are supported by admissible evidence. The plaintiff did not respond to the defendants' proposed findings of fact or submit any sworn documents in opposition to the defendants' motion for summary judgment. Accordingly, the defendants' proposed findings of fact will be deemed admitted for the purpose of deciding summary judgment. *See* Fed. R. Civ. P. 56(c); Civil Local Rule 56(b)(4) (E.D. Wis.). The Court has also reviewed the plaintiff's Second Amended Complaint (Doc. 25), which is sworn and can be construed as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir.1996).

3

Mindy Russell, Dena Wendling, and Dawn Smith are no longer employed by the Kenosha Visiting Nurse Association, Inc. All of these defendants were working at the Jail in 2010.

**A. Asthma**

When the plaintiff entered the Jail on August 31, 2010, he had previously been diagnosed with Asthma. He brought a Ventolin HFA inhaler with him to the Jail, which he was to take as needed up to two puffs orally four times a day. Dawn Smith spoke with Dr. Akgulian, and his orders were given to start QVAR inhalers if the plaintiff's respirations were below 250 and to continue to use Ventolin as a rescue inhaler. QVAR is typically used for maintenance and control of Asthma. The plaintiff's respiratory status was checked as ordered.

The plaintiff's primary treatment for his Asthma in 2010 was daily use of an Albulterol inhaler. When the plaintiff was booked into the Kenosha County Jail on August 31, 2010, he received a new Albuterol with 125 puffs. Initially, the plaintiff was allowed to keep the inhaler with him in his cell. He was directed to inhale the medication two puffs at a time, four times per day.

On September 7, 2010, a Jail nurse told Dr. Akgulian that the plaintiff had only 20 puffs left on the inhaler, raising a substantial concern that the inhaler was being overused or intentionally abused. Dr. Akgulian asked the staff to perform a peak flow breathing test and ordered that an additional medication, Q-Var, be added to the plaintiff's Asthma regimen if the breathing test demonstrated a certain value. The peak flow test administered on

4

September 7 showed that although the plaintiff was not in acute respiratory distress the results were such that Q-Var was to be started per Dr. Akgulian's order. Dr. Akgulian was not told that the plaintiff was experiencing respiratory difficulty on September 7. Nor do the records demonstrate that the plaintiff was in distress in any way.

On September 9, 2010, Dr. Akgulian learned that the plaintiff's Albuterol inhaler, which had 20 puffs remaining on September 7, was now empty, indicating that it had been overused. The records demonstrate a concern among the staff only about the rapid dissipation of Albuterol and the plaintiff's possible overuse of his inhaler.

Dr. Akgulian ordered that the Albuterol inhaler be refilled, but he also ordered that the inhaler be kept on the medication cart in the Health Services Unit to prevent the plaintiff from overusing it. Dr. Akgulian ordered that the plaintiff's Albuterol inhaler be provided to him when he was suffering from a respiratory attack. The plaintiff knew that he should notify a correctional officer if he was having difficulty breathing. Dr. Akgulian also ordered on September 9 that the plaintiff's breathing be assessed by the nursing staff at the next available sick call.

The plaintiff was irate that he was no longer allowed to keep his Albuterol in his cell. He was given the inhaler at a medication pass on September 9, but placed the inhaler in his pocket and refused to return it to the nurse until a correctional officer was called to retrieve it. There is no medical record regarding an Asthma attack on September 9. The nursing notes indicate that the plaintiff was angry, but not in respiratory distress.

There is also no record of an Asthma attack on September 10. At med pass at 7:10 a.m., the plaintiff reported that he was having trouble breathing. He was assessed and initially seemed short of breath, but he was able to speak clearly and without apparent breathing problems or distress as he continued to talk. He was informed that he was to notify a correctional officer for an evaluation if he had breathing problems. At 7:45 a.m., the plaintiff submitted a medical request form claiming difficulty breathing, saying he needed his inhaler, and requesting a breathing treatment. The plaintiff also reported that he had an asthma attack the previous day that lasted more than four hours before anyone responded.

On the same day, the plaintiff was seen in the Health Services Unit (HSU) for an assessment. He was evaluated, noted to have clear lungs, was able to converse, and showed no signs or symptoms of distress. No shortness of breath was noted.

A nurse performed a respiratory assessment on September 10, per Dr. Akgulian's request. She noted that the plaintiff had no shortness of breath or other signs of respiratory distress. The nurse informed the plaintiff that he would have access to his inhaler if needed by contacting a correctional officer. The plaintiff was again furious about not being allowed to keep his Albuterol in his cell. He argued with the nurse in a confrontational matter and threatened to contact his lawyer to sue.

The plaintiff submitted yet another medical request form on September 10, claiming that he still needed a breathing treatment and wanted his Albuterol inhaler. A response was sent to him indicating that he had been assessed earlier and that Dr. Akgulian

6

had not issued any new orders based on the information from that assessment.

The plaintiff was given another peak breathing assessment on September 10. the nurse administering the test noted that the plaintiff was not in any respiratory difficulty, but she failed to follow instructions by initiating his expiration before the appropriate time. This suggested to Dr. Akgulian, who was informed of the test results, that the plaintiff may have been manipulating the results.

On September 11, 2010, the plaintiff complained of difficulties breathing and requested a breathing treatment. Nurse Oberhart responded that this had been addressed previously and that there were no new orders received from the jail doctor.

The plaintiff filed another medical request form the next day, again requesting a breathing treatment and complaining of some shortness of breath. He was informed that there were no volume nebulizer treatments ordered by the doctor.

During the morning medication pass on September 13, the plaintiff used both his Ventolin and QVAR inhalers, but no shortness of breath or wheezing was noticed. That night, the plaintiff submitted another medical request form complaining of breathing problems and coughing. He was seen on sick call, where it was noted that he had a grey pallor and some shortness of breath; he was given three inhalations of his Ventolin inhaler. His peak flows were assessed and he was instructed to notify HSU if he had difficulty breathing.

On September 14, new physician orders were received, and the plaintiff

7

received an Albuterol inhaler to keep in his cell.

The plaintiff's next complaint of breathing problems occurred two weeks later, on September 27. The plaintiff complained of breathing problems and requested a breathing treatment. He was told that breathing treatments require a doctor's order and was asked whether he wanted to be seen in HSU. The plaintiff made no request to be seen.

The plaintiff submitted a medical request form the next day asking for a breathing test. Nurse Medly responded that the plaintiff should let HSU know if the inhalers were not working.

On October 18, 2010, Dr. Akgulian ordered that the plaintiff's QVAR inhaler would be discontinued after it was empty. Dr. Akgulian exercised his professional judgment to discontinue Q-Var because the plaintiff's symptoms did not warrant this medication.

The plaintiff next complained of breathing problems on November 11. He was seen in sick call the next day, was deemed stable, and was to continue using his Ventolin inhaler as ordered and contact a corrections officer if he had problems.

The plaintiff again complained of shortness of breath on November 19 and requested a breathing treatment. he was informed that he should tell a guard to notify HSU if he was having problems and he would be seen. On evening med pass, the plaintiff was observed to have a steady gait with no shortness of breath or other signs of respiratory distress.

On November 20, 2010, Dr. Akgulian ordered an Albuterol nebulizer treatment

8

for the plaintiff because the plaintiff was having difficulty speaking and had shortness of breath and wheezing. The plaintiff presented with shortness of breath again on November 21, 2010, and Dr. Akgulian ordered Albuterol nebulizer treatments for the plaintiff on an as needed basis. On November 21, 2010, Dr. Akgulian started the plaintiff on a prescription for Prednisone to treat his Asthma by preventing future flare-ups.

The plaintiff received a new Albuterol inhaler at 4:45 p.m. on December 6, 2010. At 5:00 p.m., he submitted a medical request form complaining of shortness of breath and that his Prednisone was discontinued. He was seen at 6:40 p.m. and assessed. He was given a nebulizer treatment and improved. He was instructed to notify the correctional officer if his symptoms worsened, but he appeared to have no distress when he was seen later on med pass.

The plaintiff did not suffer from an untreated respiratory attack during his incarceration. All respiratory attacks that are documented in the plaintiff's medical record were properly treated. There is no evidence that Dr. Akgulian knew the plaintiff suffered an untreated respiratory attack during his incarceration.

**B. Schizophrenia Medication**

The plaintiff had a prescription of Seroquel to treat his Schizophrenia. On October 13, 2010, the plaintiff submitted an inmate medical request form indicating that he had not received his Seroquel for days but he had been charged for it. He was told that the Seroquel had been ordered but not yet received. The plaintiff's prescription for Seroquel was

9

in the process of being refilled during the time period that he missed doses. A review of the Zone Medical Log for the plaintiff shows the plaintiff was not given his evening dose from October 11 through October 13, and he was not given his morning dose on October 14. After October 14, he received the Seroquel as prescribed.

Dr. Akgulian did not see the inmate medical request form from the plaintiff and he had no knowledge that the plaintiff had gone without his Seroquel. However, it is Dr. Akgulian's opinion that missing three evening doses of Seroquel and one morning dose of Seroquel did not put the plaintiff at risk of a serious medication complication. There is no injury noted in the plaintiff's medical chart. Additionally, the psychiatrists at the plaintiff's subsequent place of incarceration did not believe he had Schizophrenia and discontinued the Seroquel prescription.

## C. Psoriasis

On September 3, 2010, the plaintiff requested Clobetasol cream for his Psoriasis. Instead, Dr. Akgulian prescribed A&D ointment and tar shampoo for the plaintiff's Psoriasis.

On September 23, 2010, the plaintiff again requested Clobetosol. He was informed that no creams were sent from Dodge County. He also was asked whether he wanted to be seen in the HSU, but he made no request to be seen.

On September 30, the plaintiff requested a refill of his A&D ointment. He was placed on the list for a follow up visit for Psoriasis and instructed to use his tar shampoo.

10

The plaintiff's skin was examined on October 4, and Dr. Akgulian ordered that the plaintiff apply A&D ointment to affected areas for one month and then be re-checked.

The plaintiff requested to be seen again for his Psoriasis on October 28. He was told to continue to use the products previously sent to him. The plaintiff renewed his request for Clobetosol cream the next day and requested clarification of the instructions. Nurse Oberhart referred him to the previous day's medical advice. The plaintiff once again requested clarification of the previous instructions and requested Clobetosol on October 31. He was again told that Dr. Akgulian had not ordered Clobetosol.

The plaintiff's skin was rechecked on November 7, 2010, and Dr. Akgulian ordered A&D ointment for him to be applied.

### III. DISCUSSION

All of the defendants argue that they are entitled to summary judgment on the plaintiff's Eighth Amendment medical care claims. The defendants dispute whether any of the plaintiff's medical issues constituted a serious medical need and, even if they did, maintain they were not deliberately indifferent.

The plaintiff argues that the defendants all caused the plaintiff's injuries and that his medical records were manipulated to make it look like the defendants were victims. He contends that he suffered constant injuries at the Jail, that it is impossible to separate one defendant's actions from another, and that a jury trial is necessary to decipher who did what.

For the purposes of summary judgment, the Court will consider each of the

11

plaintiff's medical problems a serious medical need.

## A. Deliberate Indifference

In *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir.2008), the Seventh Circuit set forth the legal standard for Eighth Amendment medical care claims:

> The states have an affirmative duty to provide medical care to their inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). And the upshot of this duty is that the "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.* at 104, 97 S.Ct. 285. To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir.2000).

If the Court concludes that the plaintiff had a serious medical need, the Court must then consider whether the defendants were deliberately indifferent to the plaintiff's injury during the course of his treatment.

> Deliberate indifference is a subjective standard. *Johnson*, 444 F.3d at 585. To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. *Id.* A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe*, 631 F.3d at 857. Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir.1998). In other words, "[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir.2008). "A jury can infer deliberate indifference on the basis of a physician's treatment decision

12

> [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (quotation marks omitted). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857 (quotation marks omitted).

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir.2011).

"A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir.2011) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir.2008)). "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person did not base the decision on such a judgment." *Id.*

However, a prisoner does not need to show that he was literally ignored, and some treatment does not foreclose his deliberate indifference claim. *Arnett*, 658 F.3d at 751 (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)). Further, disagreement with a medical professional about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir.2003).

"A delay in the provision of medical treatment for painful conditions–even

13

non-life threatening conditions–can support a deliberate indifference claim so long as the medical condition is sufficiently serious or painful." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir.2009)(quoting *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir.2008)). "However, the action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." *Knight*, 590 F.3d at 466; *see also Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir.2007) (plaintiff must offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm).

**B. Asthma**

With regard to the his Asthma, Dr. Akgulian had a competent and complete plan for dealing with the plaintiff's concerns. He prescribed several medications to treat the plaintiff's Asthma, as well as breathing treatments. He only removed the plaintiff's inhaler from his cell when its rapid use suggested the plaintiff was not using it as directed. After a few days with extra reports of breathing problems, the plaintiff was once again allowed to keep his inhaler in his cell. Dr. Akgulian avers that the plaintiff's Asthma was under control during his time at the Jail.

The plaintiff maintains that there was a four and a half hour delay in him receiving treatment on September 10, the day after his inhaler was removed from his cell due to concerns of abuse. The plaintiff submitted unsworn declarations from other inmates who saw the plaintiff having trouble breathing that day. However, the plaintiff did receive

14

treatment for his asthma. He had a peak flow test on September 7, the results of which triggered the addition of a QVAR inhaler, per Dr. Akgulian's orders. The plaintiff had access to his inhalers on the medication cart, and he was told to alert a correctional officer if he was having trouble breathing. The plaintiff's breathing was assessed by medical staff on September 9 and September 10, and he had peak flow tests on September 10 and 13 too. On September 14, Dr. Akgulian revised his orders to allow the plaintiff to keep his Albuterol inhaler in his cell. The plaintiff made frequent requests regarding his Asthma; he was assessed often, and his treatments were altered in response to the results and the plaintiff's requests. This is not deliberate indifference.

The plaintiff received nebulizer treatments on November 21 and December 6. He submits that the defendants' failure to provide nebulizer treatments earlier, despite his requests for them, constitutes deliberate indifference. What the plaintiff has presented is a disagreement with a medical professional about treatment needs, which cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir.2003). Additionally, the plaintiff has presented no verifying medical evidence that any delay worsened his condition. *See Knight*, 590 F.3d at 466; *see also Williams*, 491 F.3d at 715 (7th Cir.2007). In fact, prior to the incidents in November that led Dr. Akgulian to order the breathing treatments, the plaintiff had not made any complaints about his Asthma since September.

15

**C. Schizophrenia Medication**

The plaintiff had a prescription of Seroquel to treat his Schizophrenia. He did not receive his evening dose of the medication from October 11 through October 13, and he was not given his morning dose on October 14. A refill of the plaintiff's prescription for Seroquel had been ordered but not yet received when he missed the doses.

Dr. Akgulian argues that the short interruption in delivery of the plaintiff's medication was not serious enough to implicate the Eighth Amendment. Dr. Akgulian further argues that he did not know about the medication interruption.

The plaintiff alleges that his mental health deteriorated without his medication, resulting in difficulty sleeping. However, interruptions in treatment may violate the Eighth Amendment only if the interruption leads to a serious health risk. Once again, the plaintiff has not introduced any verifying medical evidence showing that his condition worsened because of the delay. *See Knight*, 590 F.3d at 466; *see also Williams*, 491 F.3d at 715. The plaintiff's subjective complaints that he had difficulty sleeping are not enough.

Additionally, while the failure to have the plaintiff's prescription refilled before the medication ran out may have been negligent, evidence that a defendant acted negligently does not support a claim for deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996).

**C. Psoriasis**

During his time at the Kenosha County Jail, the plaintiff received multiple

16

tubes of A&D ointment and containers of tar shampoo. He used them instead of Clobetasol cream, and there is no indication in the plaintiff's medical records that the tar shampoo and A&D ointment were not working for him. A&D ointment and tar shampoo was a suitable treatment for the plaintiff's Psoriasis, and they did not cause him injury. Even if the plaintiff would have preferred Clotetosol cream, disagreement with a medical professional about treatment cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini*, 352 F.3d at 331.

## IV. ORDER

**IT IS THEREFORE ORDERED** that defendant Nicholas Akgulian's motion for summary judgment (Docket #60) is **granted**.

**IT IS FURTHER ORDERED** that the medical defendants' motion for summary judgment (Docket #66) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing the plaintiff's Eighth Amendment medical care claims.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2013.

**SO ORDERED,**

_____
**HON. RUDOLPH T. RANDA**
**U. S. District Judge**

17